UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID STILLINGS,                                Case No. 1:13-cv-539

       Plaintiff,                                    Beckwith, J.
                                                             Bowman, M.J.
   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff David Stillings filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Plaintiff presents two claims of error, both of which the Defendant disputes. Upon careful review, the undersigned recommends that the Commissioner's decision be REMANDED because it is not supported by substantial evidence in the administrative record,

**I. Summary of Administrative Record**

On June 20, 2010, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of July 9, 2009, due to physical and mental impairments. (Tr. 199-211, 247). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On February 22, 2012, ALJ Gregory Kenyon held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff, and an impartial vocational expert. On March 30, 2012, ALJ Kenyon denied Plaintiff's applications in a written decision. (Tr. 19-29). Plaintiff now seeks judicial review of the denial of his application for benefits.

Plaintiff was 38 years old on the date of the administrative hearing. He has a high school equivalent education and past relevant work experience in nursing and as a cook. (Tr. 28). He alleges disability since July 9, 2009 due to lumbar degenerative disc disease, cervical degenerative disc disease, residuals of ganglion cyst on his right wrist, depression/bipolar disorder, and anxiety disorder. He is insured for benefits through September 30, 2013.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative dsic disease, cervical degenerative disc disease, residuals of ganglion cyst on the right wrist, depression/bipolar disorder, anxiety disorder, history of polysubstance abuse." (Tr. 21). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> He can occasionally crouch, crawl, stoop, kneel, balance, and climb ramps and stairs. He can never climb ladders, ropes or scaffolds. He can never work around hazards such as unprotected heights or dangerous machinery. He is limited to occasional overhead reaching and frequent use of the hands for handling and fingering. Mentally, the claimant is limited to performing unskilled, simple, repetitive tasks. He is limited to occasional contact with coworkers and supervisors and no contact with the public. He cannot perform jobs involving rapid production pace work or strict production quotas. He is limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work setting from one day to the next.

(Tr. 23). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, and RFC, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the national economy, including such jobs as housekeeper/cleaner, inspector, and machine tender. (Tr. 28).

2

Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) inaccurately interpreting the evidence in reaching Plaintiff's RFC; and 2) improperly weighing the medical evidence. Plaintiff's assignments of error are well-taken.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

3

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for either DIB or SSI, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. The ALJ's Decision is not supported by Substantial Evidence**

Plaintiff alleges that the ALJ improperly interpreted the medical evidence of record and improperly weighed the opinion evidence; and as a result, his RFC assessment is not substantially supported. The undersigned agrees, and herein recommends that this matter be remanded for further-fact finding.

4

*1.  Relevant Evidence and ALJ's decision*

In formulating Plaintiff's RFC, the ALJ determined the objective evidence did not supported Plaintiff's subjective complaints of pain and disability.  In this regard, the ALJ noted that an MRI of Plaintiff's cervical spine on December 17, 2010 revealed only mild to moderate level multilevel degenerative disc changes consistent with cervical degenerative disc disease (DDD).  (Tr. 25).  The ALJ further noted that there was no evidence of nerve root compression, cervical radiculopathy, or other neurological involvement which could cause functional limitations as alleged by Plaintiff.

The ALJ also noted that an MRI of Plaintiff's lumbar spine on November 19, 2010 showed moderate level degenerative changes consistent with lumbar DDD, with some nerve root abutment at L4-L5 and some "potential for intermittent nerve root impingement" at L4-L5. (Tr. 250).  X-rays of Plaintiff's lumbar spine in December 2010 were normal with no evidence of spondylolysis or spondylolisthesis.  (Tr. 455-56).  The ALJ noted that Plaintiff has received only conservative treatment for her back pain, including oral narcotic pain medication.

Next, with respect to Plaintiff's complaints of numbness in his hands, the ALJ noted that in June 2011, Plaintiff had a ganglion cyst removed from his right wrist.  No complications were experienced during the procedure and subsequent follow-up visits indicated that Plaintiff had no infection and half the normal range of motion in his right wrist.  Plaintiff was advised that his reduced range of motion was due to excess scar tissue and he was instructed to strengthen his wrist using three pound weights to improve his strength and range of motion.  (Tr. 647)

The ALJ also considered the functional impact of Plaintiff's mental impairments. In this regard, the ALJ determined that the evidence of record is inconsistent with

5

Plaintiff's mental allegations.  The ALJ noted that Plaintiff treated at LifePoint Solutions between October 2010 and December 2011, where he was diagnosed with major depression and posttraumatic stress disorder.  The ALJ also noted that Plaintiff was found to be "polysubstance abuse dependent." (Tr. 26).  The ALJ also noted that following a consultative examination he was found to have only moderate limitations in his ability to relate to others, maintaining attention, concentration persistent and pace, withstanding stress and pressure associated with day to day work activities.

In reaching his RFC determination, the ALJ gave little weight to the opinion evidence of record.  Notably, he afforded little weight to the opinions of the state agency physicians who concluded that Plaintiff did not have a severe impairment.  In support of this finding, the ALJ fund that the "MRI evidence of record shows medically significant cervical and lumbar DDD, which would limited the claimant to light work."  (Tr. 26).

The ALJ also assigned "little weight" to the assessment provided by Dr. Zmora, Plaintiff's treating physician.  Notably, Dr. Zmora opined that Plaintiff could lift and carry less than 10 pounds, stand and/or walk for less than 2 hours, and sit for less than 6 hours.  Essentially, Dr. Zmora concluded that Plaintiff could not perform even sedentary work.  (Tr. 880-86).  The ALJ rejected Dr. Zmora's extreme opinion finding that it was inconsistent with the objective evidence of record, particularly MRI evidence, and was inconsistent with the largely "conservative nature of the treatment [Plaintiff] has received to date for both his lumbar and cervical complaints." (Tr. 26).

Next, the ALJ also assigned "little weight" to the opinions of Tracy Bone, Plaintiff's physical therapist.  On February 16, 2012, Ms. Bone completed a Physical Residual Functional Capacity Assessment wherein she opined that Plaintiff could sit for 15 minutes at a time and stand/walk for only 10 minutes.  She further determined that

6

Plaintiff's fine motor skills were significantly impaired. The ALJ rejected Ms. Bone's findings because it appeared to be "based entirely on claimant's subjective allegations and complaints." (Tr. 27). The ALJ also found that Ms. Bone is not an "acceptable" medical source as defined by Agency regulations.[1]

With respect to Plaintiff's mental impairments, the ALJ assigned "great weight to the assessment of Christopher Ward, Ph.D., who completed a consultative psychological evaluation of Plaintiff on October 10, 2010. Upon examination, Dr. Ward diagnosed Plaintiff with bipolar disorder and a history of polysubstance abuse in remission. (Tr. 442-46). He assigned Plaintiff a Global Assessment of Functioning (GAF) score of 52, which indicates moderate symptoms. Dr. Ward determined that Plaintiff's mental health issues resulted in moderate limitations in his ability to relate to others, including co-workers and supervisors, his ability to maintain attention concentration, persistence, and pace, and in his ability to withstand the stress and pressure associated with day to day work activity. (Tr. 446). Dr. Ward further determined that Plaintiff's ability to understand, remember, and follow simple instructions is mildly impaired by his mental health difficulties. *Id.* The ALJ afforded Dr. Ward's findings great weight because he determined that Dr. Ward's opinion is based on and consistent with signs and findings made upon examination as well as the medical evidence of record based as a whole. (Tr. 27).

Next, the ALJ gave "significant but limited weight" to the findings of Teresa Anderson, M.D., who treated Plaintiff at LifePoint Solutions from October 2010 through

---

[1] An administrative law judge is not required to afford the same level of deference to opinions of "other sources" as he or she must afford to the opinions of "acceptable medical sources." See 20 C.F.R. § 404.1513(a) (noting that information from "other sources" cannot establish the existence of an impairment, and that there must be evidence from an "acceptable medical source" for this purpose).

February 2011. On February 2, 2011, Dr. Anderson completed a Daily Activities Questionnaire wherein she opined that Plaintiff would have some difficulty relating to others but that he was able to manage fairly complex tasks such as bill paying. She further opined that Plaintiff had a significant criminal history for forgery, theft, breaking and entering, and receiving stolen property. The ALJ found that Plaintiff's criminal history reflected negatively on Plaintiff's credibility.

Finally, the ALJ gave "little weight" to Dr. Anderson's subsequent assessment completed on January 12, 2012, wherein she indicated that Plaintiff was markedly limited in his ability to maintain attendance; coordinate with others; complete a normal workday without interruption and perform at a consistent pace; interact appropriately with the general public and with co-workers. (Tr. 639). The ALJ, however, rejected Dr. Anderson's assessment because it did not include any psychological findings to justify the assigned level of limitations and was "instead based upon an uncritical acceptance of the claimant's subjective allegations and complaints." (Tr. 27).

*2. The ALJ's RFC Assessment does not comport with Agency Regulations and Controlling Law*

Upon careful review, the undersigned finds that the ALJ's evaluation of the medical evidence, as well as the weight assigned to the opinion evidence, is not substantially supported. In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord

8

controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

Moreover, it is well established that it is the ALJ's responsibility to formulate the RFC. See 20 C.F.R. § 404.1546(c). See also 20 C.F.R. § 404.1527(e)(2) (the final responsibility for deciding RFC is reserved to the Commissioner even though "we consider opinions from medical sources on issues such as ... your residual functional capacity"). However, "[t]he ALJ must not substitute [his] own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record*." Mason v. Commissioner of Social Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D.Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir.1963); *Clifford v. Apfel*, 22.7 F.3d 863, 870 (7th Cir.2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir.1985); *Sigler v. Secretary of Health and Human Servs.*, 892 F.Supp. 183, 187–88 (E.D.Mich.1995). Thus, while an ALJ is free to

9

resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. "The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Com'r of Soc. Sec.,* No. 1:07–cv–51, 2008 WL 1733181, at * 13 (S.D. Ohio April 14, 2008) (Beckwith, J, citing *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir.1963)).

Here, in reaching Plaintiff's physical RFC for light work, the ALJ rejected the findings of Plaintiff's treating physician and treating physical therapist who both found that Plaintiff could perform less than sedentary work. The ALJ also rejected the findings of the state agency physicians who found that Plaintiff did not suffer from a severe impairment. In support of this finding, the ALJ found that the "MRI evidence of record shows medically significant cervical and lumbar DDD, which would limited the claimant to light work." (Tr. 26). However, there is no medical opinion in the record which establishes that Plaintiff's MRI results suggest that Plaintiff is capable of performing light work.

The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. However, it appears in making this determination, the ALJ, in part, impermissibly acted as his own medical expert. *See Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir.1975). Because the ALJ created RFC limitations based only on his own review of the medical evidence instead of eliciting a specific medical opinion as to Plaintiff's residual functional capacity, the Court finds itself unable to undertake an appropriate substantial evidence review.

10

Next, with respect to Plaintiff's mental impairments, the ALJ's sparse rationale relating to his decision to afford "significant but limited weight" to Dr. Anderson's February 2011 assessment prevents the Court from engaging in meaningful review of his decision in this regard. Notably, the ALJ fails to provide any rationale for this finding, and states only that Plaintiff's criminal history "reflects negatively on claimant's credibility." (Tr. 27).

As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D.Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.,* 378 F.3d 541, 544–546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security,* 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services,* 753 F.2d 517 (6th Cir.1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained"). Here, the ALJ's evaluation of the opinion evidence does not build an accurate and logical bridge between the evidence and his conclusion.

Furthermore, with respect to the ALJ's evaluation of Dr. Anderson's January 2012 assessment, the fact that Dr. Anderson's opinions were based on Plaintiff's self-reports does not provide an adequate basis to reject such findings. (Tr. 27). Notably,

11

the Sixth Circuit Court of Appeals, citing *Poulin v. Bowen,* 817 F.2d 865 (D.C.Cir.1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently; the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness.... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen,* 874 F.2d 1116, 1121, (6th Cir.1989).

In *Blankenship,* the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship,* 874 F.2d at 1121. Thus, interviews are clearly an acceptable diagnostic technique in the area of mental impairments and Dr. Anderson could rely upon the subjective complaints elicited during his evaluation of Plaintiff in formulating Plaintiff's functional restrictions. *See Warford v. Astrue,* No. 09–52, WL 3190756, at *6 (E.D.Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments). As such, to the extent the ALJ rejected Dr. Anderson's opinions because she relied upon Plaintiff's subjective complaints; such a finding is not substantially supported. Furthermore, the ALJ improperly determined that Dr. Anderson's assessment was not based upon her own objective findings. Notably, the ALJ appears to ignore the treatment notes from LifePoint Solutions (where Plaintiff underwent therapy and treated with Dr. Anderson) which includes objective

12

findings[2] relating to Plaintiff's mental impairments. (Tr. 714-820). These include clinical findings such as depressed mood, worthlessness, hopelessness, low energy, low motivation, poor concentration, poor coping skills, tearful, agitated and angry mood. (Tr. 721, 722, 749, 761, 772, 776, 778, 779, 783, 785, 788, 796, 797, 799, 800, 805, 809, 810).

In sum, the reasons given by the ALJ in rejecting Plaintiff's treating psychiatrist's findings were not supported by the record and therefore do not qualify as "good reasons" as required under the regulations. *See Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004) (The ALJ must articulate "good reasons" for not giving weight to a treating physician's opinion and such reasons must be based on the evidence of record). As found by the Sixth Circuit in *Wilson,* even where the decision of the Commissioner is supported by substantial evidence, reversal is required where the agency fails to follow its own procedural regulations and where the regulation was intended to protect applicants. *Id.* Accordingly, the undersigned concludes that this matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four

---

[2] Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Id.* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) consistent with this Report and Recommendation. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                            */s Stephanie K. Bowman*
                                            Stephanie K. Bowman
                                            United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID STILLINGS,                             Case No. 1:13-cv-539

       Plaintiff,                              Beckwith, J.
                                                  Bowman, M.J.
    v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).